RYDER, Judge.
The City of Belleair Beach, Florida (City) appeals an “order declaring allowable density of residential dwelling units” concerning the use of Belleair Beach Yacht Club’s (Club) property. The order objected to was contained in an order reserving jurisdiction within an amended final judgment. We affirm in part and reverse in part.
The property at issue is located within a single residential housing zoning district which requires a minimum of 1500 square feet per residential unit. The Club obtained the property in 1982. The Club’s predecessor in interest purchased the property from one Frederick Hemerick in 1981.
Soon after purchase, the Club decided to build dwelling units and a yacht club facility on the property, but the City refused to issue a building permit. The Club filed a complaint for declaratory relief, alleging, *531 inter alia, that the City was bound by an agreement with the Club’s predecessor in interest, Hemerick, which permitted the construction contemplated by the Club.
In 1978, when Hemerick owned the property, the City determined that Hemerick’s improvements on the property violated various fire and safety codes. At that time, there were four buildings of construction similar to “army huts” on the property: Building 1 — a manager’s residence; Building 2 — one apartment, a kitchen, and a clubhouse; Building 3 — two apartments; and Building 4 — two apartments. These four buildings totaled 4600 square feet and had six residential units, including the manager’s residence. The City notified Hemer-ick of the unsafe conditions and gave him ninety days to correct the deficiencies or he would be required to demolish and remove the buildings. Hemerick countered, stating he wanted to repair the buildings, and alleged that the City’s notification was unclear and needed clarification.
The parties negotiated and soon the City and Hemerick entered into an agreement on January 23, 1978. That agreement recited that the parties desired to amicably settle their differences and, for consideration, agreed: (1) Hemerick would remove all the buildings, except for the caretaker’s premises, sixty days from execution of the agreement; (2) Hemerick would repair and restore the grounds where the buildings were previously located to a condition which would conform with the general neighborhood; and (3) the parties agreed that “replacement structures may be constructed in the future on said property, provided, however, that the use of such structures shall not be inconsistent with the uses now permitted.” (Emphasis added.)
Although the property was in a single family residential district, at the time of the agreement the city zoning code contained a special regulation recognizing that Hemerick’s yacht club was a nonconforming use. The pertinent portion of the regulation stated: “This lot is hereby declared in nonconformity as to zoning restrictions ... imposed by this chapter insofar as use is concerned.... This entire provision is included in this section in recognition of the fact that Yacht Club buildings and facilities now occupy the premises in nonconformity.”
On the date of the agreement, the zoning code also provided definitions for “nonconformity” and “nonconforming structures”:
Nonconformity: (nonconforming lot, nonconforming structure or nonconforming use.) A lot, structure or use, the characteristics of which were established and lawful prior to the passage of this ordinance or any amendment thereto, but which would not be permitted to build or use in the same manner under the terms of this ordinance or any amendment thereto.
Nonconforming structures. In the event the owner desires to make structural alterations to and/or substantial improvement of existing nonconforming structures, any such changes which are in conformity with the provisions of this ordinance are permitted; changes which perpetuate the nonconformity are not permitted. A building permit is required for any changes.
In 1986, after a trial on the Club’s complaint for declaratory relief, the court rendered an amended final judgment declaring the City zoning laws allowed the Club to use the property for residential purposes and allowed construction and operation of a private yacht club. The court also ruled that construction of the yacht club is not confined to the “footprint” of the buildings which had been previously constructed on the property. We note that because the court used the words “yacht club” and “buildings”, it was referring not only to the building containing the yacht club but those containing the residences as well.
In November of 1987, the Club filed a motion requesting the court to declare the density of the residential dwelling units which may be constructed on the property. In 1988, the court entered an order declaring the allowable density is six residential dwellings and a yacht club facility, as evidenced by the intent of the City and Hem-erick under the 1978 agreement. On ap *532 peal, the City argues, inter alia, that the trial court’s ruling is unsupported by evidence. We do not agree. However, we do agree that the order is in need of further interpretation and clarification, and reverse and remand for that purpose.
The trial court’s 1988 judgment properly ruled that the Club was entitled to construct six residential dwelling units and a yacht club facility on its property, and we affirm the court’s judgment in that regard. However, under the provision of the agreement which allows for “replacement structures” and under the applicable provisions of the zoning code, these six residential dwelling units and the yacht club facility cannot consist of more than four buildings. The court was correct that the Club is not limited to constructing these buildings to be a “footprint” of the previous buildings, which were in the nature of “army huts.” However, the agreement clearly and unambiguously states that any rebuilding is limited to “replacement structures.” Although that term is not defined within the agreement itself, the phrase obviously seeks to limit construction of the buildings to the same size as the previously existing buildings. Otherwise, the phrase would operate as an unlawful extension of a nonconforming use. Town of Redington Shores v. Innocenti, 455 So.2d 642, 643 (Fla. 2d DCA 1984). This interpretation is harmonious with the City’s zoning code, to which the parties made implicit reference in the 1978 agreement: “[T]he construction of any other facility, shall be performed in accordance with all applicable building codes, County and Municipal Ordinances, and any and all other applicable rules and regulations pertaining to said work....” Therefore, we affirm the trial court’s judgment declaring the density to be six residential units and a yacht club facility, but reverse and remand in order to allow the trial court to clarify the order and state the number of buildings and square footage thereof which can be constructed.
Appellant conceded it is willing to issue appellee permits to rebuild four buildings. Those four buildings shall be constructed, as required by the 1978 agreement, to comply with all applicable building codes, county and municipal ordinances, and all other applicable rules and regulations pertaining to such construction.
Affirmed in part, reversed in part and remanded with instructions.
CAMPBELL, C.J., and SCHOONOVER, J., concur.